ALEXANDER TIDWELL *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Instructions. Evidence. Want of. Weight of.*

Instructions in a criminal case, as well as a civil one, should be refused if they be upon the weight of the evidence or if there be no evidence of which to predicate them.

2. SAME. *Homicide. Insanity.*

In a prosecution for homicide, a requested instruction that if the defendant received a blow on his head which affected his mind to some extent, and that, when under excitement or anger, such affection caused him to lose mental control of himself, together with mental control of his power to distinguish between right and wrong, and that, at the time of the killing, defendant was laboring under great mental excitement, and entertained no malice towards deceased, but merely wished to protect himself, and that the affection of his mind produced a mental delusion magnifying the extent of his danger, and that, while laboring under such delusion, and without malice, he shot and killed deceased, or, if the jury had a doubt as to the truth of such facts, they should acquit defendant, was properly refused, as improperly drawn, and on the weight of evidence.

3. SAME.

An instruction in a prosecution for homicide that if defendant's mind was measurably impaired by a blow on his head, and, while ordinarily sane, his mind would become so disordered under excitement as to cause him to lose power to distinguish between right and wrong, and was laboring under such disorder at the time of firing the fatal shot, and magnified, through a delusion, the danger to which he was exposed, and, without malice, and with a perfectly sincere belief that he was in immediate danger of death at the hands of deceased, fired the

fatal shot, he should be acquitted, was properly refused, as an inaccurate statement of the law, and on the weight of evidence.

4. SAME.    *Evidence of wastefulness.*

In a prosecution for homicide, evidence that defendant would spend his substance in purchasing articles for which he had no special use, and that he neglected to provide for the future support of his family, did not constitute proof of insanity.

FROM the circuit court of Holmes county.

HON. WILLIAM F. STEVENS, Judge.

Tidwell, the appellant, was indicted, tried, and convicted of murder, and appealed to the supreme court.

The evidence showed that Tidwell went with an officer and some other men to a house to arrest a man one night. Graves came up toward the house, and was mistaken by Tidwell for the man they were looking for, and Tidwell shot Graves, slightly wounding him. Graves became angry, and said: "I will get even with you if I live." A few days after this occurrence, Graves and Tidwell went into a neighboring town, and went home on the same wagon. After they had gotten out of town, Tidwell insisted that Graves accept his apology and explanation of the shooting, but Graves declined to make friends with him. Tidwell had a shotgun with him, he says, to protect himself, as Graves had threatened to kill him. Tidwell further testified that Graves threw down a paper sack he had in his hand, and put his right hand behind him, as if to get a pistol from his pocket, and he immediately shot him from the rear. Graves died immediately from the effects of this shooting. Some testimony was taken in the effort to show the temporary insanity of Tidwell at the time of the shooting. The court refused the following instructions asked by the defendant:

"No. 1. The court instructs the jury that if they believe from the evidence that Tidwell received a blow upon his head some years ago, which affected his mind to some extent, and that, when under excitement or anger, this affection of the mind caused him to lose mental control of himself, and, along with his mental control, the power to distinguish between right and

wrong, and that, at the time of the killing, defendant was laboring under great mental excitement, and entertained no malice against Graves, and merely wished to protect himself, and that the affection of his mind caused by such injury produced a mental delusion magnifying the extent of danger to which he was then exposed, and that while laboring under such delusion, and without malice, he shot and killed Graves, or, if the jury have a doubt as to the truth of these facts, then they should find the defendant not guilty.

"No. 2. The court instructs the jury that if they believe from the evidence in this case that Tidwell's mind was measurably impaired by a blow on his head, and that, while ordinarily sane, his mind would become so disordered under excitement as to cause him to lose the power of distinguishing between right and wrong, and that he was laboring under such disorder at the time of firing the fatal shot, and magnified, through a delusion, the danger to which he was exposed, and without malice, and with a perfectly sincere belief that he was in immediate danger of death at the hands of Graves, fired the fatal shot, then the jury will acquit Tidwell."

*Noel, Pepper & Elmore,* for appellant.

There being evidence before the court that appellant had received a blow on the head, five or six years before, which made him senseless for about two weeks, and that his mind had been defective ever afterwards, and that under fear and excitement, where his own life was concerned, he might magnify the danger to which he was exposed and kill any one, two instructions were asked on that line. Both were refused. These instructions asked the court to leave to the jury the question of appellant's mental condition under excitement as affecting the question of malice; if they believed he had received a blow on his head which affected his mind, and that when angered this affliction caused him to lose self-control and the power to distinguish between right and wrong, and that he was under such

excitement, and entertained no malice when the fatal shot was fired, they should acquit.

The question presented does not relate to the weight of evidence, but turns upon the question of whether or not there was any evidence of such impairment of mind that the question should have been submitted to the jury; and this question we submit to this court.

*J. N. Flowers*, assistant attorney-general, for appellee.

No such showing as to probable insanity was made as to require the state to go into this investigation or to assume the burden of proving sanity. Since this is true, it was not error for the trial court to refuse instructions defining the law as to the responsibility for crime of persons acting under delusions. This issue was not presented. It will not be required of trial judges that they chase off after every suggestion of counsel. No man was ever tried for murder in whose life conduct could not be found to suggest, when detailed before a jury at the trial, temporary insanity. The courts will require a respectable showing to be first made before they take up or recognize this issue. The rule is stated by this court in *Ford* v. *State*, 73 Miss., 734, 739, as follows: "The burden of proof never shifts in a criminal case. It is true that every man is presumed to be sane. It is also true that this presumption of sanity will be sufficient to sustain the burden resting on the state of proof of sanity on the part of defendant at the time of the commission of the act charged, if defendant offers no testimony to meet the presumption sufficient to raise, out of the evidence in the case, a reasonable doubt of the defendant's sanity at the time he committed the act."

It is for the trial judge to determine whether the defense has made such showing as to call for rebuttal testimony.

TRULY, J., delivered the opinion of the court.

The action of the court in refusing the two instructions denied the appellant was correct. The instructions are erro-

neously drawn, and do not state accurately the proposition of law which it was sought to announce, and they fall within the condemnation of the statute which prohibits the jury being charged as to the weight of evidence. In addition to this, the record contains no testimony upon which to base the theory of partial or temporary insanity sought to be availed of on behalf of the appellant. The fact that he was excitable and emotional, and the further fact that he would spend his substance in purchasing articles for which he had no special use, and neglect to provide for the future support of his family, are simply racial characteristics, and cannot properly be considered any proof of insanity. The crime which appellant committed was atrocious and unprovoked, and he should be thankful for the leniency displayed by the jury in not affixing the death penalty.

*Affirmed.*

